J-S23004-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KARIM McCREA, | : | |
| | : | |
| Appellant | : | No. 2398 EDA 2013 |

Appeal from the Judgment of Sentence November 16, 2012,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0000429-2011

BEFORE:  DONOHUE, SHOGAN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED JUNE 10, 2015**

Karim McCrea ("McCrea") appeals from the judgment of sentence entered following his convictions of murder in the first degree and possessing instruments of crime ("PIC").[1]  Following our review, we affirm McCrea's convictions but remand for resentencing.

The basic facts underlying these convictions are as follows.  On the evening of June 11, 2010, Elijah Owens ("Victim") was shot and killed in a driveway behind 6908 N. 19th Street in the City of Philadelphia.  Two men, Nathaniel Alston and William Grier, saw McCrea shoot Victim.  McCrea immediately fled the scene.  The first police officers to respond to the scene of the crime transported Victim to the hospital, where he was pronounced dead.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 907.

*Retired Senior Judge assigned to the Superior Court.

At the conclusion of a jury trial, McCrea was convicted of the crimes mentioned above. The trial court imposed the mandatory sentence of life in prison on the first-degree murder conviction and a concurrent sentence of two and a half to five years on the PIC conviction. McCrea did not file post-sentence motions or a direct appeal. He subsequently filed a petition pursuant to the Post-Conviction Relief Act ("PCRA"), seeking the reinstatement of his direct appeal rights.[2] The trial court granted his petition and this appeal followed.

McCrea presents two issues for our review:

1. Is [McCrea] entitled to an arrest of judgment of all charged where the verdict is not supported by sufficient evidence?

2. Is [McCrea] entitled to a new trial on all charges where the verdict is against the weight of the evidence?

McCrea's Brief at 3.

We begin with the second issue, in which McCrea attempts to raise of claim that the verdict was against the weight of the evidence. "[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Commonwealth v. Thompson*, 93

---

[2] McCrae did not seek to file a post-sentence motion nunc pro tunc. *See* Counseled [PCRA] Petition Seeking to Reinstate Appellate Rights[] Nunc Pro Tunc Due to Administrative Oversight in Law Office, 5/7/13.

A.3d 478, 490 (Pa. Super. 2014) (internal citations omitted); *see also* Pa.R.Crim.P. 607. The record reveals that McCrea did not file a post-sentence motion or otherwise preserve this issue in the court below. Accordingly, he has waived it for purposes of appeal.

In his remaining issue, McCrea argues that the evidence was insufficient to support his convictions. When reviewing a sufficiency of the evidence claim, "we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (quoting *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011)). When performing this review, "we may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Id.* The Commonwealth may rely solely on circumstantial evidence to support a conviction, and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa. Super. 2008).

"A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a).

> To sustain a conviction for first-degree murder, we must conclude that the evidence established the following three elements: (1) that a human being

was unlawfully killed; (2) that the accused is responsible for the killing; and (3) that the accused acted with a specific intent to kill, i.e., in a willful, deliberate, premeditated way. The Commonwealth may sustain its burden to establish each element with the presentation of wholly circumstantial evidence. For example, specific intent to kill can be inferred from the application of deadly force to the victim's person.

***Commonwealth v. Pruitt***, 951 A.2d 307, 313-14 (Pa. 2008) (internal citations omitted). With regard to PIC, "[a] person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). An instrument of crime is defined, in relevant part, as "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have[,]" 18 Pa.C.S.A. § 907, and includes a firearm used in the commission of a crime. ***See Commonwealth v. Stanley***, 446 A.2d 583, 588 (Pa. 1982) (holding that where appellant possessed a revolver when arrested for escape, he possessed an instrument of crime for purpose of Pa.C.S.A. § 907).

Our review of the evidence of record, in the light most favorable to the Commonwealth, reveals that on June 11, 2010 at approximately 9:00 in the evening, Nathaniel Alston was asleep on the back deck of 7009 Georgian Road in Philadelphia. N.T., 11/14/12, at 163-64. He was woken by the sound of gunfire. ***Id.*** at 165. He immediately ran toward the side of the porch and as he did so, he looked down and saw McCrae shoot Victim. ***Id.***

at 165-67. He then watched McCrae and another person run away "up the driveway." *Id.* at 166. Mr. Alston was familiar with McCrea because they hung around the same neighborhood and because they had attended high school together. *Id.* at 161.

Mr. Alston feared that Victim was his girlfriend's younger brother, and so after McCrea fled, he ran to check the identify of Victim. *Id.* at 167-68. As he did, he came into contact with William Grier, who was also running toward the scene of the shooting. *Id.* at 170. Mr. Grier testified that on the night of the shooting, he was on Georgian Road changing the brakes on a female friend's car when he heard gunfire coming from the driveway behind him. N.T., 11/15/12, at 10, 12. His friend indicated that her little brother was in the area from which the gunshots came, and so Mr. Grier ran toward the shots to check on him. *Id.* at 12. In a statement he gave to the police four days after the shooting,[3] Mr. Grier said that he saw McCrea "with his hand out and [] saw the spark of the last shot. … [He] saw [Victim] falling to the ground. He landed on his back." *Id.* at 54. According to Mr. Grier, McCrea then ran down the driveway and looked directly at Mr. Grier as he did so. *Id.* at 56.

Within minutes of the shooting, Victim was taken to the hospital by the police where he was pronounced dead. N.T., 11/14/12, at 94, 97. Victim

---

[3] At trial, Mr. Grier recanted his statement and testified that he did not see who shot Victim. N.T., 11/15/12, at 15.

was shot seven times. *Id.* at 127. Victim was struck in the chest, back, arms and legs. *Id.* at 128-144. One shot to Victim's torso eviscerated multiple organs, including Victim's heart, and lodged in Victim's chest. *Id.* at 128. Although this shot alone would have been fatal, the medical examiner testified that Victim's death was caused by multiple gunshot wounds. *Id.* at 130,157.

We conclude that this evidence is sufficient to establish that McCrea intentionally shot Victim multiple times in the abdomen, back and extremities (i.e., that McCrae applied deadly force to Victim's person), and that Victim's death occurred as a result. Accordingly, the evidence is sufficient to support McCrae's convictions.

McCrea's argument to the contrary is based on Mr. Grier's denial, at trial, that he saw McCrea shoot Victim and the Commonwealth's impeachment of this testimony with the statement that Mr. Grier gave to the police.[4] McCrea argues that because there was nothing to corroborate this out-of-court statement and because "there was ample reason to disbelieve the statement[,]" there is insufficient evidence to support his conviction of murder. McCrea's Brief at 8-9. There are multiple problems with this argument. First, McCrea is ignoring Mr. Alston's testimony, in which he stated that he also witnessed McCrea shooting Victim. Second, there is no

---

[4] Detective Crone, the officer to whom Mr. Grier gave his statement, also testified at trial and as part of his testimony, he read Mr. Grier's entire statement into evidence. N.T., 11/15/12, at 218-29.

requirement that the Commonwealth corroborate a witness's testimony, as it has long been held that the testimony of a single witness, when believed by the trier of fact, is sufficient to support a conviction.  **See Commonwealth v. Filer**, 846 A.2d 139, 141 (Pa. Super. 2004) ("The uncorroborated testimony of a victim, if believed by the trier of fact, is sufficient to convict a defendant[.]").  Finally, McCrea's argument regarding the credibility of Mr. Grier's statement to the police is addressed to the weight of the evidence, **Commonwealth v. Feucht**, 955 A.2d 377, 382 (Pa. Super. 2008), and so they are misplaced in his argument challenging the sufficiency of the evidence.

Although there is no merit to the claims raised by McCrea on appeal, our review of the record reveals that his sentence is illegal.[5]  McCrea was convicted of first-degree murder and sentenced on November 16, 2102.  The trial court sentenced McCrea, who was seventeen years old at the time he committed the murder at issue, to life without parole.  **See** N.T., 11/16/12, at 183.  Prior to October 25, 2012, juveniles convicted of first-degree murder were subject to mandatory sentences of life without parole. 18 Pa.C.S.A. § 1102(a)(1) (superseded by 18 Pa.C.S.A. § 1102.1).  Such mandatory sentences for juveniles were declared unconstitutional by the United States Supreme Court in **Miller v. Alabama**, __ U.S. __, 132 S. Ct.

---

[5] This Court may raise issues concerning the legality of a sentence sua sponte. **Commonwealth v. Stetler**, 95 A.3d 864, 888 n.6 (Pa. Super. 2014).

2455, 2469 (2012). Post *Miller*, a trial court may impose a sentence of life without parole on a juvenile, but only upon consideration of certain age related factors. *Miller*, 132 S.Ct. at 2475; *see also Commonwealth v. Batts*, 66 A.3d 286, 291 (Pa. 2013). In response to *Miller*, our Legislature promulgated 18 Pa.C.S.A. § 1102.1, which provides, in relevant part, as follows:

> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S.A. § 1102.1(a)(1). In recognition of *Miller's* holding that a life sentence may not be imposed without consideration of certain age related factors, subsection (d) of this statute includes a list of factors that a trial court must consider before imposing a sentence of life without parole on a juvenile. *See* 18 Pa.C.S.A. § 1102.1(d) ("In determining whether to impose a sentence of life without parole under subsection (a), the court **shall** consider and make findings on the record regarding the following … .") (emphasis added).

Section 1102.1 became effective on October 25, 2012, and therefore was in effect at the time the McCrea was convicted and sentenced. Nonetheless, the trial court imposed McCrea's life sentence without consideration of the factors contained in Section 1102.1(d). The imposition of a sentence of life without parole on a juvenile without consideration of age-related factors is unconstitutional and therefore illegal. *Miller*, 132 S.Ct. at 2469; *Batts*, 66 A.3d at 291. Accordingly, we vacate McCrea's judgment of sentence and remand for resentencing pursuant to Section 1102.1.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2015