J-S35029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES CHARLES DIEGEL, JR. | : | |
| | : | |
| Appellant | : | No. 315 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 23, 2020,
in the Court of Common Pleas of Lebanon County,
Criminal Division at No(s): CP-38-CR-0001847-2019.

BEFORE: OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: FEBRUARY 7, 2022**

James Charles Diegel, Jr., appeals from the judgment of sentence imposed following his conviction for corruption of minors and endangering the welfare of children ("EWOC").[1] Although we affirm his convictions, we vacate his judgment of sentence in part and remand for resentencing.

The trial court set forth the relevant factual and procedural background as follows:

> On October 16, 2019, L.R. told people at her high school that she had been sexually assaulted by [Diegel]. A school counselor with nineteen (19) years of experience interviewed L.R. during a highly emotional exchange during which L.R. shed tears, L.R. revealed that she had been sexually fondled by her step-father. The counselor called L.R.'s mother and Lebanon County Children and Youth Services (CYS).

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 6301(a)(1)(ii), 4304(a)(1).

L.R. was interviewed by Detective David Shaffer and by Violet Witter of the Children's Resource Center. The interview was videotaped. During the interview, L.R. repeated her report about sexual abuse. Thereafter, [Diegel] was charged criminally. At a Preliminary Hearing, L.R. repeated her story about sexual abuse for a third time.

After criminal charges were filed, L.R.'s mother threw her support behind [Diegel] instead of L.R. Mrs. Diegel explained that L.R. had been diagnosed with mental health issues beginning at age 7. She also stated that L.R. had a history of failing to tell the truth. Mrs. Diegel also stated that when allegations of sexual impropriety were lodged against her husband, L.R. was having difficulty with her medication cocktail.

In December of 2019, L.R. was committed to the Philhaven mental health hospital. In February of 2020, L.R. was committed to the Lancaster Behavioral Health Center as a result of PTSD, anxiety, depression and Oppositional Defiant Disorder, all of which led to her exhibiting a suicidal ideation. At some point during L.R.'s acute psychiatric distress, she recanted her story about sexual assault committed by [Diegel].

The prosecution team obviously did not find L.R.'s efforts at recantation to be credible. The prosecution was continued against the wishes of both L.R. and her mother.

Eventually, on September 22, 2020, a jury trial was conducted. L.R. was the first witness. She acknowledged that she told her school counselor and authorities about an assault committed by [Diegel]. She even acknowledged that she believed that she was telling the truth when she reported the abuse. However, she characterized her earlier reports as a "lucid dream." She explained that she mistakenly conflated conduct committed by an earlier boyfriend with conduct of [Diegel]. Although she stated that she believed that what she said to her counselor and authorities was true when she uttered it, she later realized that her "dad" "didn't do it."

Following presentation of all of the gut-wrenching and sometimes confusing testimony presented at trial, the jury commenced its deliberations. Hours passed. At one point, the jury indicated that it was unable to reach a unanimous verdict.

> The court sent them back into the jury room to try again. Eventually, the jury did return a split verdict. The jury found [Diegel] guilty of counts 1 [(corruption of minors)] and 2 [(EWOC)] but it could not reach a decision on count 3 [(indecent assault)]. When this verdict was announced, the court met privately with counsel while the jury remained in place. Everyone agreed that the verdict should be recorded and that its efficacy should be addressed via post-sentence motions.

Trial Court Opinion, 3/5/21, at unnumbered 2-4 (footnote and unnecessary capitalization omitted).

On December 23, 2020, Diegel appeared for sentencing. Because Diegel was convicted of corruption of minors, graded as a third-degree felony, and had a prior rape conviction in 2002, all parties agreed that he was subject to a mandatory minimum of twenty-five years of imprisonment. *See* 42 Pa.C.S.A. § 9718.2(a)(1) (providing mandatory sentences for sex offenders who have a prior conviction for a sex offense under the Sexual Offender Registration and Notification Act (SORNA)). *See also* 42 Pa.C.S.A. § 9799.14 (providing tier system for registration requirements for sex offenders).

Before imposing the mandatory minimum, the trial court stated:

> I do not believe that what I am about to do constitutes justice.
>
> I am not for a second discounting the need of society to punish those who sexually abuse children; but imposing a 25- to 50- year prison sentence for conduct that is ordinarily punished by a maximum of 7 years and most often far less effectively punishes [Diegel] for a prior crime for which he already was sentenced and served considerable periods of time in prison.
>
> And because of that prior offense, we are now saying that conduct for which a jury could not render a unanimous

- 3 -

opinion should land this gentleman in prison for 25 to 50 years.

\*\*\*

And here we have a victim who is very clearly saying to me I don't want him punished. I will suffer. I will suffer psychologically if you punish him. The law should not require me to ignore those statements.

I do not like what I am about to do. That is not to say that [Diegel] should not be punished. That is not to say that [Diegel] should not spend time in prison. That is not to depreciate the hard work undertaken by a jury of 12 citizens who found [Diegel] guilty of Counts I and II.

What it is to say is that I think applicability of a mandatory sentence 25 to 50 years under the facts of this case is just flat out wrong, but the law does not give me any choice; and I am going to do just that.

N.T., at 10-12. The trial court then imposed the mandatory 25 to 50-year sentence for corruption of minors but did "not do so gleefully." *Id.* at 14. For the EWOC conviction, the trial court imposed a concurrent 2-5-year sentence. The court further informed the victim that, if "[le]ft to [his] own devices" he would have also imposed a 2-5-year sentence for the corruption of minors conviction. *Id.* at 15.[2]

On March 5, 2021, the trial court denied Diegel's timely-filed post-sentence motion. This appeal followed. Both Diegel and the trial court have complied with Pa.R.A.P. 1925.

Diegel raises the following issues for our review:

_____

[2] The parties agreed that Diegel did not meet the criteria of a sexually violent predator.

- 4 -

1. That the verdict was against the weight and sufficiency of the evidence presented at trial because there was no additional evidence of the alleged acts of [Diegel] other than the statement of the victim and later recanted at trial.

2. That the verdict was against the weight and sufficient [*sic*] of the evidence presented at trial in that there was no physical evidence that [Diegel] committed the alleged acts that the victim alleged at trail [*sic*].

3. That the verdict was against the weight and sufficiency of the evidence presented at trial in that there was no forensic evidence to corroborate the allegations of the victim.

4. Whether the Court committed prejudicial error by sentencing [Diegel] to minimum of twenty-five (25) years to a maximum of fifty (50) years based on the evidence presented at trial.

Diegel's Brief at 4-5 (unnecessary capitalization omitted).

In his first three issues, Diegel purports to challenge both the sufficiency and the weight of the evidence supporting his convictions.[3]  Initially, we must determine whether Diegel preserved these claims for our review.

In reference to Diegel's sufficiency claims, this Court has consistently held:

> If [an] appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [] does not specify the allegedly

---

[3] We note with disapproval that, Diegel should not have combined his sufficiency and weight claims, as these claims present distinctly different questions which require separate discussion and analysis.  Pursuant to our appellate rules, Diegel should have identified them as separate issues.  **See** Pa.R.A.P. 2119(a) (providing that "[t]he argument shall be divided into as many parts as there are questions to be argued").

unproven elements[,] . . . the sufficiency issue is waived [on appeal].

***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008) (quoting ***Commonwealth v. Flores***, 921 A.2d 517, 522-23 (Pa. Super. 2007)). Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains more than one element that the Commonwealth must prove beyond a reasonable doubt. ***See Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009). When a concise statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal. ***Williams***, 959 A.2d at 1257.

In the instant matter, Diegel was convicted of two crimes, corruption of minors and endangering the welfare of children, each of which contains more than one element that the Commonwealth must prove beyond a reasonable doubt. In order to sustain a conviction for corruption of minors, the Commonwealth must prove that: (1) the defendant was at least eighteen years old at the time of the offense; (2) the victim was less than eighteen years old at the time of the offense; and (3) that the defendant's specific actions corrupted or tended to corrupt the minor's morals. ***See*** 18 Pa.C.S.A. § 6301(a)(1)(i).

To establish the offense of EWOC, the Commonwealth must demonstrate that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, . . . knowingly endangers the welfare of the child

by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). In addition, the Commonwealth must establish each of the following factors to support the intent element of EWOC: (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. **See Commonwealth v. Wallace**, 817 A.2d 485, 490-91 (Pa. Super. 2002).

In the instant matter, our review of the concise statement reveals that Diegel collectively stated his sufficiency and weight claims as follows: "there was no additional evidence of the alleged acts of [Diegel] other than the statement of the victim and later recanted at trial;" "there was no physical evidence that [Diegel] committed the alleged acts that the victim alleged at trail [*sic*];" and "there was no forensic evidence to corroborate the allegations of the victim." Concise Statement, 3/18/21, at 1-2.

The concise statement failed to specify the element or elements of either corruption of minors or EWOC that allegedly went unproven at trial. **See**

*Williams*, 959 A.2d at 1257. Due to this deficiency, Diegel failed to preserve his sufficiency claims for our review.[4]

Moreover, to the extent that Diegel sufficiently preserved his weight-of-the-evidence claims in his post-sentence motion and in his concise statement, he nevertheless failed to address them in his brief. Indeed, Diegel's brief does not include any discussion of his weight-of-the-evidence issues or citation to relevant legal authority for such claims. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. See Gould*, 912 A.2d 869, 873 (Pa. Super. 2006) (holding that the appellant's brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities). Due to the absence of any discussion of Diegel's weight claims in his brief, we deem those issues abandoned.

For these reasons, Diegel's first three issues entitle him to no relief.

_____

[4] Even if Diegel had preserved his sufficiency claims for our review, we would have determined that they lack merit, as the uncorroborated testimony of a sexual assault victim may be sufficient to convict a defendant. *See Commonwealth v. Filer*, 846 A.2d 139, 142 (Pa. Super. 2004) (addressing sufficiency of evidence of aggravated indecent assault); *see also Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) (addressing sufficiency of evidence of indecent assault); *Commonwealth v. Davis*, 650 A.2d 452, 456 (Pa. Super. 1994) (addressing sufficiency of evidence of endangering the welfare of children and corruption of minors). Thus, the Commonwealth was not required to present any evidence beyond L.R.'s testimony to meet its burden of proof. Although L.R. recanted her original statement at trial, the video recording of her earlier statement was still fully admissible as substantive evidence. Pa. R.E. 803.1; *Commonwealth v. Stays*, 70 A.3d 1256, 1262 (Pa. Super. 2013). As such, the Commonwealth presented sufficient evidence of the crimes charged.

In his fourth issue, Diegel challenges his sentence of twenty-five to fifty years in prison. This claim implicates the discretionary aspects of the trial court's authority to impose its sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue, this Court conducts a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted). When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *See Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997); *see also Commonwealth v. Tuladziecki*, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b).

Here, Diegel filed a timely notice of appeal and preserved his discretionary sentencing claim in a timely post-sentence motion. However, Diegel's brief has a fatal defect in that it does not include a separate Rule 2119(f) statement. Pursuant to Rule 2119(f), "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal

with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). The Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the Code is violated (*e.g.*, the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). **See Commonwealth v. Goggins**, 748 A.2d 721, 727 (Pa. Super. 2000). Additionally, the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm. **Id**. Generally, an appellate court will only evaluate substantive discretionary sentencing claims that were relied upon in the Rule 2119(f) concise statement. **See Commonwealth v. Feucht**, 955 A.2d 377, 384 (Pa. Super. 2008).

Diegel has not included a Rule 2119(f) statement in his brief. However, when the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate or enforce the requirements of Pa.R.A.P. 2119(f) *sua sponte*, *i.e.*, deny allowance of appeal. **See Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004) (citation omitted).

Here, the Commonwealth has not objected to Diegel's failure to include a Rule 2119(f) statement in his brief. Therefore, we may reach our own conclusion as to whether Diegel should be permitted to proceed with this

appeal. *See Commonwealth v. Slotcavage*, 939 A.2d 901, 904 (Pa. Super. 2007).

In the instant matter, Diegel makes no effort in his brief to explain how his discretionary sentencing claim raises a substantial question. He has not specified what particular provision of the Code the trial court allegedly violated. Nor has Diegel identified which fundamental norm his sentence purportedly violates and the manner in which it violates that norm. Indeed, Diegel concedes that the trial court imposed the statutory minimum sentence. Where a sentence falls within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *Moury*, 992 A.2d at 171. Thus, as Diegel has not raised a substantial question, we decline to reach the merits of his challenge to the discretionary aspects of his sentence.

Nevertheless, this Court may raise a claim regarding the legality of a sentence *sua sponte*. *Commonwealth v. Wolfe*, 140 A.3d 651, 655 (Pa. 2016). Improper grading of an offense implicates a sentence's legality. *Commonwealth v. Aikens*, 139 A.3d 244, 245 (Pa. Super. 2016). Because Diegel was not convicted of the underlying indecent assault charge—a Chapter 31 offense—his corruption of minors conviction must be graded as a first-degree misdemeanor and not a third-degree felony. *See Commonwealth v. Baker-Myers*, 255 A.3d 223, 234 (Pa. 2021) (holding that, based on the language of the charging document and the jury instructions, the Chapter 31

offenses were necessary elements of third-degree felony corruption of minors charge).[5] Accordingly, we vacate his sentence for this conviction. Upon remand, the trial court shall resentence Diegel for corruption of minors as a first-degree misdemeanor. *See Commonwealth v. Baker-Myers*, 210 A.3d 1093, 1096 (Pa. Super. 2014), *affirmed*, *Baker-Myers*, *supra*.[6]

Convictions affirmed. Judgment of sentence vacated in part. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2022

---

[5] Although *Baker-Myers*, involved an acquittal of the Chapter 31 offense, its holding equally applies to the jury's inability to reach a verdict on the indecent assault charge in this case. In both instances, there was no finding that that Commonwealth had proven all elements of a Chapter 31 offense beyond a reasonable doubt.

[6] We further note that, when graded as a first-degree misdemeanor, a corruption of minors conviction does not trigger the mandatory sentence under section 9718.2(a)(1).